```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
NORTH SEA ASSOCIATES, INC.,

                Plaintiff,                    MEMORANDUM AND ORDER
                                              11-CV-0048(JS)(GRB)
        -against-

PAYTON LANE NH, INC.,

                Defendant,
----------------------------------X
PAYTON LANE NH, INC.,

                Third-Party Plaintiff,

        -against-

PFC CORPORATION and the UNITED
STATES DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT,

                Third-Party Defendants.
----------------------------------X
APPEARANCES:
For North Sea:      Sanford Strenger, Esq.
                    Salamon, Gruber, Blaymore & Strenger, P.C.
                    97 Powerhouse Road, Suite 102
                    Roslyn Heights, NY 11577

For Payton:         Stuart S. Zisholtz, Esq.
                    Meng Cheng, Esq.
                    Zisholtz & Zisholtz
                    170 Old Country Road, Suite 300
                    Mineola, NY 11501

PFC Corp.:          John Raymond Ehrhart, Esq.
                    John R. Ehrhart
                    150 Broadhollow Road, Suite 355
                    Melville, NY 11747
```

| | |
|---|---|
| HUD: | Robert W. Schumacher, II, Esq.<br>U.S. Attorney's Office<br>Eastern District of New York<br>610 Federal Plaza<br>Central Islip, NY 11722 |

SEYBERT, District Judge:

Plaintiff North Sea Associates, Inc. ("North Sea") commenced this action in New York State Supreme Court, Suffolk County, against Defendant Payton Lane NH, Inc. ("Payton") to recover damages for breach of contract, misrepresentation, and conversion. Payton then commenced a third-party action against Third-Party Defendants PFC Corporation ("PFC") and the United States Department of Housing and Urban Development ("HUD") seeking a declaratory judgment that: (1) Payton has no liability to HUD, PFC or North Sea and (2) Payton has satisfied all contractual obligations to North Sea, HUD and PFC. HUD, after removing the case to federal court, filed the instant motion to dismiss the Third-Party Complaint for lack of subject matter jurisdiction. Payton opposes the motion, and in the alternative seeks leave to amend the Third-Party Complaint. For the following reasons, HUD's motion to dismiss is GRANTED, and Payton's motion to amend is DENIED.

## BACKGROUND

The allegations in the Third-Party Complaint arise out of a December 13, 2001 mortgage ("Mortgage") and mortgage note

("Note") that Payton executed in favor of PFC and a building loan agreement (together with the Mortgage and the Note, the "Loan") between Payton and PFC for the construction of a residential nursing facility in Southampton, New York ("Facility"). (Third-Party Compl. ¶¶ 5-6.) The Mortgage was insured by HUD. (Id. ¶ 9.)

On or about September 21, 2005, Payton leased the Facility to North Sea for a thirty-three year term. (Id. ¶ 7.) The lease required North Sea to pay the "Certified Debt Service"[1] on Payton's Mortgage directly to PFC. (Third-Party Compl. ¶ 8.) North Sea began making payments in February 2006. (Id.)

The Mortgage provided for a loan of $37,523,000, but as a result of a delay in the final endorsement of the Loan, only $34,102,169.14 was ultimately disbursed. (Compl. ¶¶ 6, 12-13; Third-Party Compl. ¶ 11.) According to Payton, however, PFC was still demanding monthly principal and interest based on the initial loan amount. (Compl. ¶ 13; Payton Opp'n Mem. 3.)

Payton believed that this resulted in payments being made to PFC (including the payments made by North Sea pursuant to the lease agreement) in excess of the amounts due under the Loan and commenced an action against PFC in the New York State

---

[1] The Certified Debt Service, as defined in the lease, is "the payment of principal and interest and reimbursable costs, including without limitation the reserve fund for replacements, real state tax escrows, property insurance escrows and mortgage insurance premiums" on the Mortgage. (Compl. ¶ 9.)

3

Supreme Court, New York County, in July 2008 for, inter alia, reimbursement of the alleged overpayments. (Third-Party Compl. ¶¶ 11, 13.) PFC, although asserting that all payments were proper, collected and maintained the alleged overpayments in an escrow account ("Excess Funds Escrow"). (Id. ¶¶ 12, 14.)

At the conclusion of the litigation, on or about July 16, 2009, Payton and PFC entered into a modification of the Note ("Recast Note"). (Id. ¶ 16.) The Recast Note, at HUD's insistence and direction, "retroactively folded the purported overpayments in the Excess Funds Escrow into the original Note and directed payment of the remaining vendors and payees from the funds otherwise applied to the Note then sitting in the Excess Funds Escrow." (Id. ¶ 19.) HUD and PFC explained to Payton that recasting the Note as such would liquidate the Excess Funds Escrow. (Id. ¶ 20.) Additionally, Payton alleges that HUD and PFC informed Payton that Payton would default under the Loan if it did not enter into the Recast Note. (Id. ¶ 17.)

On July 21, 2010, North Sea commenced the present action against Payton in the Supreme Court, Nassau County seeking to recover any overpayments of Certified Debt Service that it believed it made under the lease. (Compl. ¶¶ 49, 54, 60.) Payton subsequently filed a Third-Party Complaint against PFC and HUD seeking a declaratory judgment that: (1) Payton has no liability to HUD, PFC or North Sea and (2) Payton has

4

satisfied all contractual obligations to North Sea, HUD and PFC. (Third-Party Compl. ¶ 29.)

HUD, after removing the action to federal court, moved to dismiss the Third-Party Complaint under Federal Rule of Civil Procedure 12(b)(1) arguing that the Court lacks subject matter jurisdiction.

## DISCUSSION

I. Motion to Dismiss

　A. Standard of Review under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. See Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010). The Court must accept as true the factual allegations contained in the Complaint, but it will not draw argumentative inferences in favor of a plaintiff because subject matter jurisdiction must be shown affirmatively. See id.; Atlanta Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1998); Shipping Fin. Servs. Corp. v. Drakos,

5

140 F.3d 129, 131 (2d Cir. 1998). Payton, as Third-Party Plaintiff, bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Morrison, 547 F.3d at 170; see also Chayoon v. Chao, 355 F.3d 141, 143 (2d Cir. 2004).

HUD argues that the Court lacks subject matter jurisdiction because (1) HUD did not waive sovereign immunity and (2) there is no case or controversy between Payton and HUD. The Court will address each argument separately.

B. Sovereign Immunity

1. Legal Standard

In any suit in which the United States is a defendant, the Government's waiver of sovereign immunity is a prerequisite to the Court's subject matter jurisdiction. See Presidential Gardens Assocs. v. United States, 175 F.3d 132, 139 (2d Cir. 1999) (citing United States v. Mitchell, 463 U.S. 206, 212, 103 S. Ct. 2961, 77 L. Ed. 2d 580 (1983)). In other words, proving jurisdiction alone is insufficient for the suit to proceed; Payton must also show a "specific waiver of sovereign immunity." Id.

The United States may waive sovereign immunity only by federal statute, id. (citing Millares Guiraldes de Tineo v. United States, 137 F.3d 715, 719 (2d Cir. 1998)), and that waiver must be unequivocally expressed, see Lane v. Pena, 518

U.S. 187, 192, 116 S. Ct. 2092, 135 L. Ed. 486 (1996). The Court strictly construes any waiver of sovereign immunity, including any ambiguities therein, in favor of the United States. Id.; see also Kielczynksi v. Does 1-2, 56 F. App'x 540, 541 (2d Cir. 2003).

In the present case, Payton asserts that the government waived its sovereign immunity under § 1702 of the National Housing Act, 12 U.S.C. §§ 1701, et seq. ("NHA"). Section 1702 authorizes HUD "to sue and be sued" for carrying out certain enumerated provisions of the NHA. Id. § 1702.[2] Thus, the NHA "waive[s] sovereign immunity for claims alleging direct violations by HUD of the substantive provisions of the [NHA]." United States v. Yonkers Bd. of Educ., 594 F. Supp. 466, 470 (S.D.N.Y. 1984). The waiver only applies to HUD's actions taken pursuant to the specific subchapters enumerated therein. See Dickson v. Pierce, No. 86-CV-1727, 1988 WL 26107, at *4 (E.D.N.Y. Mar. 9, 1988) (citing Modular Technics Corp. v. S. Haven Houses Hous. Dev. Fund Co., 403 F. Supp. 204, 206 (E.D.N.Y. 1975), aff'd, 538 F.2d 311 (2d Cir. 1976)).

---

[2] Section 1702 provides, in pertinent part:

> The Secretary shall, in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VIII, IX-A, IX-B, and X of this chapter, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal.

7

Accordingly, the Government does not waive sovereign immunity as to other actions not enumerated in § 1702.

Therefore, the question in this case is whether the actions alleged to be taken by HUD in the Third-Party Complaint are authorized by one of the provisions enumerated in § 1702. See id. (citing Modular, 403 F. Supp. at 207).

2. Waiver Under § 1702

Payton asserts that HUD was carrying out the provisions of the NHA "dealing with the insuring of mortgages" when HUD: (1) insured the Loan, (2) directed Payton to enter into the Recast Note, and (3) directed disbursement of the Excess Funds Escrow. (Payton Opp'n 5.)[3] The Court disagrees.

In deciding whether HUD's actions here fall within the provisions of the NHA "dealing with the insuring of mortgages," the Court finds the district court's decision in Modular to be particularly instructive. In Modular, a building contractor sued HUD and the Federal Housing Authority ("FHA") for, inter alia, misrepresentations related to a building contract between the plaintiff-contractor and a low-income housing developer.

---

[3] The Court notes that the Third-Party Complaint alleges that HUD also took the following actions: HUD approved the Mortgage and Loan which Payton entered into with PFC; HUD informed Payton that Payton would face default under the Loan if Payton did not enter into the Recast Note; and HUD required Payton to evidence that certain vendors and payees of Payton were paid prior to authorizing the final endorsement of the Recast Note. (Third-Party Compl. ¶¶ 9, 16-20.)

403 F. Supp. at 205. Specifically, the plaintiff-contractor asserted that HUD and FHA made certain representations regarding the ways in which the plaintiff could successfully perform under its contract with the developer, "that these representations were false; and that as a consequence of the misrepresentations plaintiff suffered injury." Id. Notwithstanding the fact that HUD insured the loan that the developer received to pay the plaintiff-contractor, the court held that the Government in that case did not waive sovereign immunity under the NHA's provisions regarding the insuring of mortgages: "[T]he simple fact is that they were not authorized so to act, and Congress has not waived immunity against suits for damages arising from such actions." Id. at 206.[4]

Almost identical to the claims in Modular, the claims in the Third-Party Complaint against HUD arise out of alleged warranties made by HUD concerning Payton's performance under the Loan with PFC. Although HUD insured the Loan, the section of the NHA "dealing with the insuring of mortgages" (Payton Opp'n ¶ 5) does not authorize the actions allegedly taken by HUD in this case. Since the government was not authorized to so act, "Congress has not waived immunity for suits arising from such

---

[4] The court also held that the Federal Tort Claims Act, under which the government waives immunity against some tort claims, did not apply because it exempts from coverage any claim arising out of misrepresentation, deceit, or interference with a contract. Id.

9

actions." Id.; cf. S.S. Silberblatt, Inc. v. E. Harlem Pilot Block Bldg. 1 Hous. Devel. Fund Co., 608 F.2d 28, 35-36 (2d Cir. 1979) (holding that HUD did waive sovereign immunity for a claim brought by an unpaid general contractor for contractual damages arising out of a low income housing construction project because HUD's actions that gave rise to liability--being assigned the mortgage on the uncompleted project, paying the mortgage insurance, and taking possession of the property--were specifically authorized under § 1715z of the NHA).

Thus, the Court finds that Payton has failed to meet its burden of establishing a waiver of sovereign immunity by a preponderance of the evidence, and accordingly, all claims against HUD must be dismissed.

### C. Case or Controversy

Although the Court has already determined that all claims against HUD must be dismissed under the doctrine of sovereign immunity, the Court will briefly address HUD's argument that Payton's declaratory judgment action against HUD does not present a justiciable case or controversy.

#### 1. Legal Standard

Under the Declaratory Judgment Act ("DJA"), the Court may only issue a declaratory judgment "[i]n a case of actual controversy." 28 U.S.C. § 2201(a); MedImmune, Inc. v. Genetech, Inc., 549 U.S. 118, 126, 127 S. Ct. 764, 166 L. Ed. 2d 604

(2007) (citing 28 U.S.C. § 2201(a)). "The phrase 'case of actual controversy' in the [DJA] refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." MedImmune, 549 U.S. at 127 (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S. Ct. 461, 81 L. Ed. 2d 617 (1937)); accord Viña Casa Tamaya S.A. v. Oakville Hills Cellar, Inc., 784 F. Supp. 2d 391, 394 (S.D.N.Y. 2011).

The Supreme Court has stated that whether a justiciable case or controversy exists in an action seeking a declaratory judgment depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 459 U.S. at 127 (quoting Md. Casualty Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)); see also Sheet Metal Div. of Capitol Dist. Sheet Metal, Roofing & Air Conditioning Contractors Ass'n v. Local 38 of Sheet Metal Workers Int'l Ass'n, 208 F.3d 18, 23-26 (2d Cir. 2000). "Whether a real and immediate controversy exists in a particular case is a matter of degree and must be determined on a case-by-case basis." Kidder,

Peabody & Co., Inc. v. Maxus Energy Corp., 925 F.2d 556, 562 (2d Cir. 1991).[5]

### 2. No Justiciable Case or Controversy

HUD argues that there is no case or controversy between HUD and Payton here because "the Third-Party Complaint does not allege the existence of an immediate dispute between Payton Lane and HUD." (HUD Mot. 6.) The Court agrees. There is no indication that HUD's and Payton's interest are adverse at this time: HUD does not have any pending claim against Payton and there are no allegations that HUD plans to take any action against Payton in the future. "The absence of any action by HUD, even of the most preliminary nature, renders this matter into the realm of future possibilities that this Court cannot adjudicate." N. Jefferson Square Assocs., L.P. v. Va. Hous. Dev. Auth., 94 F. Supp. 2d 709, 716-17 (E.D. Va. 2000) (dismissing a third-party declaratory judgment claim against HUD because its position was not adverse to the third-party

---

[5] The Court notes that the DJA does not require federal courts to entertain declaratory actions, but rather confers "unique and substantial discretion" to the federal courts in deciding whether to declare the rights of litigants. MedImmune, 549 U.S. at 136 (emphasizing DJA's language that court "may declare rights and other legal relations of any interested parties" (quoting 28 U.S.C. § 2201(a)); see also Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998, 1000 (2d Cir. 1969). Accordingly, even when a case presents a justiciable controversy the Court "possesses statutory latitude to deny declaratory judgment where it finds that granting relief would serve no useful purpose." Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394, 431 (S.D.N.Y. 2002).

12

plaintiff's--"HUD ha[d] no legal position at all and HUD ha[d] not made any administrative decision to take action"); see also U.S. Underwriters Ins. Co. v. Kum Gang, Inc., 443 F. Supp. 2d 348, 352 (E.D.N.Y. 2006) ("A court cannot adjudicate conjectural or hypothetical cases or controversies. A controversy cannot be a mere possibility or probability that a person may be adversely affected in the future." (citations omitted)); Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co., 590 F. Supp. 187, 191 n.7 (S.D.N.Y. 1984) ("A person merely apprehending or fearing the assertion of rights against him by another cannot bring him into court and compel him to litigate." (internal quotation marks and citation omitted)). Since there is no actual controversy, the claims against HUD are not ripe for adjudication and must be dismissed.

## II. Proposed Amended Third-Party Complaint

Also pending is Payton's proposed Amended Third-Party Complaint. The only difference between the original Third-Party Complaint and the proposed Amended Third-Party Complaint is the assertion that the Court has jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1) and 1442(a). Although leave to amend should be freely granted, a Court has discretion to deny leave if an amendment would be futile. See McCarthy v. Dun & Bradstreet Corp, 482 F.3d 184, 200 (2d Cir. 2007). Here, amendment would be futile, as Payton's proposed Amended Third-Party Complaint

13

fails to correct for the shortcomings described above--it asserts neither a specific waiver of sovereign immunity nor facts establishing an actual controversy between Payton and HUD. Accordingly, Payton's motion to amend the Third-Party Complaint is DENIED.

## CONCLUSION

For the foregoing reasons, HUD's motion to dismiss is GRANTED, and Payton's motion to amend the Third-Party Complaint is DENIED. The Clerk of the Court is directed to terminate HUD as a Third-Party Defendant in this matter.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   December   6  , 2011
         Central Islip, New York